ZOKAITES CONTRACTING INC.
and Woodside Development,
Appellants

v.

TRANT CORPORATION, Shuty Inc.,
Classic Development Consultants,
Inc., John K. Trant, Donald P. Trant,
and John Doe, Appellees.

Superior Court of Pennsylvania.

Argued Jan. 13, 2009.
Filed Feb. 26, 2009.

Robert J. Blumling, Pittsburgh, for appellants.

Michael J. Pawk, Butler, for appellees.

BEFORE: FORD ELLIOTT, P.J., DONOHUE and ALLEN, JJ.

OPINION BY ALLEN, J.:

¶ 1 Zokaites Contracting Inc. and Woodside Development ("Appellants") appeal from the trial court's March 31, 2008 order certifying its January 30, 2007 order final and appealable. The trial court's January 30, 2007 order granted in part and denied in part Appellants' petition to open a judgment of *non pros* for failing to file a certifi-

cate of merit (COM) pursuant to Pa.R.C.P. 1042.3. On appeal, Appellants contend that the trial court erred in requiring them to file a COM to support allegations they made in a breach of contract count; that the trial court erred in finding that they failed to proffer a reasonable explanation for failing to file a COM; and that the trial court erred in failing to open the judgment under Pa.R.C.P. 126 and the equitable considerations of this case. We find no merit in Appellants' assertions of error; accordingly, we affirm the trial court's order.

¶ 2 The underlying dispute in this matter stems from the work performance of Trant Corporation, Shuty, Inc., Classic Development Consultants, Inc., Jon K. Trant, Donald P. Trant, and John Doe (collectively "Defendants"), in rendering professional engineering services for Appellants pursuant to written contracts.

¶ 3 On August 14, 2003, Appellants filed a Complaint in Replevin against Defendants and requested a Writ of Seizure. On August 26, 2003, Appellants filed a First Amended Complaint, asserting among other things claims of professional engineering malpractice. The four counts of the First Amended Complaint were: Count I—Replevin, Count II—Breach of Contract, Count III—Negligence, and Count IV—Piercing the Corporate Veil. On November 24, 2003, Appellants filed a motion to extend the time for filing a COM, but this motion was not docketed because Appellants did not have the correct caption on the motion. Consequently, the trial court never ruled on Appellants' motion to extend.

¶ 4 Defendants filed a series of preliminary objections and in response, Appellants filed various amended complaints. The Second Amended Complaint added a count for Interference with Contractual Relations and the Third Amended Complaint stated the following claims: Count I—Replevin, Count II—Breach of Con-

tract, Count III—Negligence, Count IV—Piercing the Corporate Veil, and Count V—Interference with Contractual Relations.

¶ 5 On May 22, 2006, Appellants placed the case at issue and trial was scheduled to begin on January 12, 2007. On December 20, 2006, Defendants filed a praecipe to enter a judgment of *non pros* because Appellants did not file a COM in support of their professional negligence claims. The prothonotary entered judgment of *non pros* in favor of Defendants on that same date.

¶ 6 On December 28, 2006, Appellants filed a petition to strike and/or open the judgment of *non pros* and Defendants filed an answer. On January 30, 2007, the trial court entered an order granting Appellants' motion in part and denying it in part. In its entirety, the trial court's January 30, 2007 order read:

AND NOW, this 30th day of January, 2007, it is hereby ORDERED that [Appellants'] petition for relief from judgment of non pros is granted in part and denied in part, as follows:

1) the judgment is opened as to Defendant John K. Trant, in all respects as he is not a licensed professional and thus, a [COM] pursuant to Pa.R.C.P. 1042.3 is not required as to him.

2) the judgment of non pros is opened as to:

(A) All Defendants with regard to the averments set forth in Count II—Breach of Contract, Paragraph 30 of the Third Amended Complaint, as follows:

Woodside Estates—Subparagraphs (a), (b), (d), and (*l*),

Marshall Woods—Subparagraphs (a), (b), (c), and (h).

Lakeview Farms4/Cedar Ridge—Subparagraphs (e) and (h).

Lakeview Farms 5—Subparagraph (a).

(B) All Defendants with respect to Count V—Interference with Contractual relations.

(C) Defendants John K. Trant and Donald P. Trant as to Count IV—Piercing the Corporate Veil—insofar as the underlying claims have not been non prossed.

In all other respects, the petition is denied.

Trial Court Opinion (T.C.O.), 6/27/08, at 3–4.

¶ 7 The trial court explained its order granting in part and denying in part Appellants' petition to open as follows:

Paragraphs 1, 2(B) and 2(C) are self-explanatory [and open the judgment for claims that do not require the filing of a COM]. Paragraph 2(A) opened portions of the judgment of non pros as it related to the breach of contract count in the Third Amended Complaint. Basically, the judgment was opened as to those averments in the breach of contract count that did not complain the contract was being breached because of the negligence of licensed professionals. For example, it was opened as to: "failed to install 104 permanent monuments . . ." and "failed and refused to provide digital plans to Pennsylvania Power Company." The judgment of non pros was not opened as to the allegations of professional malpractice, e.g., "design errors for . . ." or "improperly designed . . ."

T.C.O., 6/27/08, at 4.

¶ 8 Appellants then filed a motion for certification. On February 27, 2007, the trial court certified its January 30, 2007 order for interlocutory appeal and stayed the trial until this Court ruled on Appellants' petition for interlocutory appeal. On May 10, 2007, this Court declined to hear the appeal, the case was remanded and the trial court scheduled trial for November 11, 2007.

¶ 9 Prior to the commencement of trial, the parties entered into a partial settlement agreement, and Appellants released its claims that were scheduled to go to trial, i.e., Count I—Replevin, Count II—Breach of Contract (the portions that the trial court opened), Count IV—Piercing the Corporate Veil, and Count V—Interference with Contractual Relations. The release agreement, however, did not encompass the portion of the trial court's order that denied Appellants' petition to open and thus, did not extinguish the claims that were subjected to the judgment of non pros, i.e., Count II—Breach of Contract (the averments that the trial court found required the filing of a COM) and Count III negligence claims. As a result, Appellants sought to appeal the aspect of the trial court's order that denied their petition to open and requested that the trial court declare its January 30, 2007 order final and appealable. On March 31, 2008, the trial court declared that its order of January 30, 2007 was a final order.

¶ 10 Appellants now appeal to this Court, raising the following issues for review:

1. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THAT APPELLANTS WERE REQUIRED TO FILE A CERTIFICATE OF MERIT WITH RESPECT TO THEIR BREACH OF CONTRACT CLAIMS AGAINST THE DEFENDANTS WHERE THE PARTIES ENTERED INTO FOUR (4) SEPARATE AND DISTINCT CONTRACTS WHICH OUTLINED THE EXPRESS TERMS AND CONDITIONS OF THE AGREEMENT OF THE PARTIES?

2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT APPEL-

LANTS' PETITION TO STRIKE OR OPEN THE JUDGMENT OF NON PROS WHERE APPELLANTS MET THE STANDARDS REQUIRED TO OPEN SAID JUDGMENT?

3. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE PETITION TO STRIKE OR OPEN THE JUDGMENT OF NON PROS WHERE APPELLANTS RELIED UPON HERRMAN V. PRISTINE PINES OF FRANKLIN PARK, INC.[?]

4. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE PETITION TO STRIKE AND/OR OPEN THE JUDGMENT OF NON PROS WHERE THE TRIAL COURT FAILED TO GRANT RELIEF TO APPELLANTS PURSUANT TO PA.R.CIV.P. 126 UNDER THE CIRCUMSTANCES OF THIS CASE?

Brief for Appellants at 5.

¶ 11 "When reviewing a petition to open and/or strike a judgment of *non pros* pursuant to Pa.R.C.P. 1042.6, our Court may reverse the decision of the trial court only if we find that the trial court abused its discretion in reaching its determination." *Mumma v. Boswell, Tintner, Piccola & Wickersham,* 937 A.2d 459, 463 (Pa.Super.2007) (citation omitted). A petition seeking to open a judgment of *non pros* must allege that: (1) the petition is timely filed; (2) there is a reasonable explanation or legitimate excuse for the inactivity or delay, and (3) there is a meritorious cause of action. Pa.R.C.P. 3051(b). Here, it is undisputed that Appellants' petition to open was timely filed and that their complaint avers a meritorious cause of action; hence, the disputes in this case concern the second element, *i.e.*, whether Appellants provided a legitimate excuse explaining their failure to file a COM.

¶ 12 Pa.R.C.P. 1042.3 applies to professional liability claims against licensed professionals. Pa.R.C.P. 1042.1(b)(1)(i). "The rule contemplates that a [COM] will be filed contemporaneously with or shortly after the filing of the complaint, and provides a 60–day window after the filing of the complaint to accomplish the filing of the [COM]." *Varner v. Classic Communities Corp.,* 890 A.2d 1068, 1073 (Pa.Super.2006) (citation, internal quotation marks, and brackets omitted). Among other things, a COM must contain a certified statement from a licensed professional that the defendant's conduct fell outside professional standards of care or that expert testimony is unnecessary for prosecution of the claim. Pa.R.C.P. 1042.3(a)(1)-(3).

¶ 13 If Pa.R.C.P. 1042.3 applies and the plaintiff fails to provide a COM, the prothonotary must, on praecipe of the defendant, enter a judgment of *non pros* against the plaintiff, so long as there is no pending timely filed motion seeking to extend the time to file a COM. *See* Pa.R.C.P. 1042.6(a) (amended June 16, 2008). A motion to extend the time for filing a COM must be filed on or before the date in which the filing of the COM is due–60 days after the filing of the complaint. *See* Pa.R.C.P. 1042.3(d) (amended June 16, 2008).

¶ 14 Appellants first contend that the trial court erred in denying, in part, their petition to open because its breach of contract claims did not require the filing of a COM. Brief for Appellants at 25. Appellants maintain that their breach of contract claims were grounded on the existence of written contracts between the parties and thus, the trial court erred in extending the judgment of *non pros* to encompass these claims. *Id.* at 29–30. Upon review, we find that Appellants' arguments are an

inaccurate assessment of the record and the law.

¶ 15 In relevant part, Pa.R.C.P. 1042.3 states:

> (a) In any action **based upon an allegation that a licensed professional deviated from an acceptable professional standard,** the attorney for the plaintiff . . . shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party[.]

Pa.R.C.P. 1042.3(a)(1)-(3) (emphasis added).

¶ 16 In order to determine whether an action is a professional negligence claim as opposed to another theory of liability, this Court must examine the averments made in the complaint. *Ditch v. Waynesboro Hosp.,* 917 A.2d 317, 322 (Pa.Super.2007), *appeal granted in part,* 594 Pa. 36, 934 A.2d 1150 (2007). The substance of the complaint rather than its form is the controlling factor to determine whether the claim against a defendant sounds in professional negligence or contract. *See Merlini v. Gallitzin Water Auth.,* 934 A.2d 100, 106 (Pa.Super.2007).

¶ 17 Under Pennsylvania law, a client may bring both a contract action and a tort action against a professional. *See Fiorentino v. Rapoport,* 693 A.2d 208, 213 (Pa.Super.1997). To establish a breach of duty in a professional negligence action, a plaintiff must show that the defendant's conduct fell below the relevant standard of care applicable to the rendition of the professional services at issue. *Merlini,* 934 A.2d at 105. In most cases, this determination requires expert testimony because the negligence of a professional encompasses matters not within the ordinary knowledge and experience of laypersons. *Id.* Otherwise, a typical breach of contract action involves (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages. *J.F. Walk-*

er Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269 (Pa.Super.2002). In a breach of contract action against a professional, the professional's liability must be based upon the terms of the contract. *Rapoport,* 693 A.2d at 213.

¶ 18 In the interest of thoroughness, we reproduce Appellants' Third Amended Complaint, Count II—Breach of Contract, highlighting in italics the particulars that the trial court concluded required the filing of a COM. In relevant part, Paragraph 30 states:

### Count II—Breach of Contract

### (Plaintiffs vs. All Defendants)

\*   \*   \*   \*   \*   \*

30. Defendants' work on the contracts was poor, improper, unworkmanlike, and contained numerous defects in design standards as well as failed to complete the work in the following material respects:

**Woodside Estates:**

(a) Failed to install 104 permanent monuments as required by the contract, plans and municipality;

(b) Failed to provide as-built plans and profiles of the roadways and sewer system as required by the contract and municipality;

(c) *Design errors on the grading plan resulting in an unbalanced site thereby creating additional and unnecessary earth movement;*

(d) Failed to provide digital copies of the plans;

(e) *Design errors for the finished elevation of manholes and catch basins;*

(f) *Design errors in a driveway for lots 120 and 121;*

(g) *Design errors for depth of pipes;*

(h) *Negligently deleting one catch basin on plans resulting in the street hav-*

ing to be torn up after paving to install the catch basin;

(i) Improperly and negligently staking out the areas for clearing and grubbing;

(j) Improperly and negligently marking diversion swale locations;

(k) Design errors in the storm water management plan causing downstream flooding; and

(l) Failure to complete the work agreed to under the contract.

**Marshall Woods:**

(a) Failed and refused to provide digital plans to Pennsylvania Power Company thereby preventing the installation of electricity to the plan;

(b) Failed and refused to provide digital plans to Cranberry Township in violation of municipal regulations and preventing plan approval;

(c) Failed to provide as-built plans for Phases 1 and 2;

(d) Design errors in the preparation of the off-site sanitary sewer system;

(e) Vertical design errors resulting in the unnecessary movement and stockpiling of additional earth;

(f) Design errors in the waterline;

(g) Surveying and reporting errors in the topographical survey of the property resulting in the unnecessary movement of an additional 54,000 cubic yards of earth in Phase I and 21,000 cubic yards in Phase II; and

(b) Failure to complete the work agreed to under the contract.

**Lakeview Farms 4/Cedar Ridge:**

(a) Improperly designed the grading plan resulting in the unnecessary movement of an additional 46,000 cubic yards of earth;

(b) Improperly staked out the grading for the earth work;

(c) Improperly designed the erosion and sedimentation plans;

(d) Failed to properly locate on the plans and design around several underground high pressure petroleum transmission pipelines;

(e) Failed to apply for appropriate stream crossing permit;

(f) Improperly staked out the area for clearing the land of trees and brush resulting in damage to Plaintiffs' land and to an adjoining property owner's land who has sued Plaintiffs for an amount in excess of $77,000 for actual damages;

(g) Design errors in the storm water management plan; and

(h) Failure to complete the work under the contract.

**Lakeview Farms 5:**

(a) Entering into a contract, being paid in excess of $21,000 and failing to perform any substantial work.

Appellants' Third Amended Complaint, ¶ 30.

■ ¶ 19 Here, based upon Appellants' failure to file a COM, the trial court struck only those allegations in Appellants' Count II breach of contract claims that sounded in professional negligence, namely the averments that expressly claimed that the professional Defendant(s) "negligently" performed or "improperly designed" certain work. T.C.O., 6/27/08, at 3–4; Appellants' Third Amended Complaint, ¶ 30. These averments related not to specific contractual duties and obligations regarding the manner and quality of performance, but instead, implicated Appellants' overall exercise of care and professional judgment in carrying out the work. Significantly, proof of these averments would require Appellants to proffer expert testimony to establish that the Defendant(s)' conduct fell below the standard of acceptable care in negligently "performing" and/or "designing" the work.

¶ 20 On the other hand, the trial court did not strike the allegations in Appellants' Count II breach of contract claim that sounded in contract, namely the averments alleging that the professional Defendant(s) "failed to perform" under the terms of the contract. *Id.* Unlike the averments sounding in professional negligence, the gist of these allegations concerned breaches of specific contractual duties: *e.g.*, "failed to install 104 permanent monuments ...";  "Failed to complete the work agreed to under the contract"; "failing to perform any substantial work." Consequently, the trial court's order was strictly limited to striking the allegations of Appellants' breach of contract claims that effectively raised and supported professional negligence claims. In point of fact, the trial court only struck those allegations of particular breaches in Appellants' Count II breach of contract claim that were entirely duplicative of the breaches of duty averred in their Count III negligence claims. Appellants' Third Amended Complaint, ¶¶ 30, 40.

¶ 21 Accordingly, we conclude that the trial court did not abuse its discretion in finding that Appellants' failure to file a COM barred them from asserting the allegations in its breach of contract claims that sounded in professional negligence. *See Pollock v. Feinstein*, 917 A.2d 875, 878 (Pa.Super.2007) (finding that "at the core of" appellant's informed consent/battery claim were allegations that a licensed medical practitioner deviated from the acceptable standard of care and thus, appellant's informed consent/batter claim required the filing of a COM); *Ditch*, 917 A.2d at 323 ("Here, the original complaint and the amended complaint do not specify that a professional liability claim is being raised. However, looking at the averments made by Ditch in the complaint as a whole, we agree with the trial court's conclusion that Ditch raises a professional negligence claim."). Were we to hold otherwise, our decision would permit Appellants to circumvent the mandates of Pa.R.C.P. 1042.3, by simply recasting a negligence claim into a breach of contract claim, even though the averments in support of the contract claim fundamentally question the professional's exercise of due care. Following the spirit of Pa.R.C.P. 1042.3, we decline to do so. *See Pollock*, 917 A.2d at 878 (stating that the scope of Pa.R.C.P. 1042.3 cannot be limited by a technical reading to preclude its application to a cause of action that requires a showing that a licensed professional failed to conform to a specific standard of care). Appellants' argument to the contrary does not merit relief.

■ ¶ 22 Next, Appellants maintain that the trial court erred in denying, in part, their petition to open because it established a reasonable explanation for failing to file a COM. Brief for Appellants at 30–33. Specifically, Appellants assert that their failure to file a COM was excusable on the basis that it filed an undocketed motion to extend the deadline for filing a COM. *Id.* at 33–37. Appellants also submit that they reasonably relied upon Judge Stanton Wettick's decision in *Herrmann v. Pristine Pines of Franklin Park, Inc.*, 64 Pa. D. & C. 4th 14 (Allegheny Cty.2003), which held that a defendant waives the requirements of Pa.R.C.P. 1042.3 if it does not raise a plaintiff's failure to file a COM by way of a preliminary objection. *Id.* at 37–43. As additional support for its arguments, Appellants point to the recent amendments to Pa.R.C.P. 1042.1, *et seq.*, which now require a defendant to first file a notice of intent to praecipe for entry of judgment of *non pros* and provide the plaintiff with an opportunity to file a motion contesting the issue of whether a COM must be filed, before the prothonotary can enter judgment in favor of the defendant. *Id.* at 47–49. For these reasons, Appellants ultimately conclude that

they have provided a reasonable explanation for failing to file a COM. We disagree.

¶ 23 First, Appellants' motion to extend the time for filing a COM was undocketed and more importantly, filed after the deadline for filing such a motion. Under the version of Pa.R.C.P. 1042.3(d) applicable at that time, a "motion to extend the time for filing a [COM] **must** be filed on or before the filing date that the plaintiff seeks to extend." *Id.* (amended June 16, 2008). Here, Appellants filed their First Amended Complaint on August 26, 2003, asserting claims of professional negligence for the first time. Appellants therefore had sixty days or until October 27, 2003 to file a motion to extend the time for filing a COM—the date in which the COM was due. Because Appellants filed their motion to extend with the prothonotary on November 24, 2003, it was untimely by over a month. *See Ditch,* 917 A.2d at 326 ("Since Ditch raised a professional negligence claim in her original complaint, she was obligated to file a [COM] within sixty days of her filing of the original complaint."). As a result, Appellants' mere filing of an untimely motion for an extension of time, in and of itself, was insufficient to demonstrate a reasonable explanation for their failure to file a COM. *See id.*

¶ 24 Second, Appellants' reliance on *Herrmann* is severely misplaced, because that case was criticized, if not overruled, by this Court in *Yee v. Roberts,* 878 A.2d 906, 911 (Pa.Super.2005), and subsequent case law. *See id.* ("[W]e are not persuaded that the Supreme Court intended to require the filing of preliminary objections as a prerequisite to the filing of a praecipe for judgment of non pros in an action based on professional negligence where the plaintiff fails to timely file a [COM]."); *accord Varner,* 890 A.2d at 1076; *Ditch,* 917 A.2d at 325 (reaffirming *Yee* and *Varner* in rejecting the holding of *Herrmann* ). Consequently, with this Court's

June 29, 2005 decision in *Yee,* Appellants' reliance on *Herrmann* became untenable as a matter of law. Moreover, Appellants had nearly one and one-half years following our decision in *Yee* to file a COM before Defendants filed their praecipe to enter a judgment of *non pros. See Shon v. Karason,* 920 A.2d 1285, 1291 (Pa.Super.2007), *quoting* Pa.R.C.P. 1042.6, *Note* ("The Rule notes that the prothonotary 'may not enter judgment if the [COM] has been filed prior to the filing of the praecipe' for judgment of *non pros.*"). Accordingly, in this context, Appellants' citation to *Herrmann* and any reliance that they may have had on that decision does not provide this Court with a reasonable explanation for failing to file a COM.

¶ 25 Third, Appellants' reference to the recent changes to Pa.R.C.P. 1042.6–1042.7 and their explanatory comments are unavailing. On June 16, 2008, our Supreme Court amended the Civil Rules governing the entry of a judgment of *non pros* for failing to file a COM. *See In RE: Adoption of Rule of Civil Procedure 1042.6 and Amendment of Rules 1042.1 et. seq. Governing Professional Liability Actions,* No. 493 Civil Procedure Rules, Docket No. 5, *(per curiam* Pa. 2008) (filed June 16, 2008, effective immediately). These amendments and alterations became effective immediately and, as explained above, dramatically changed the procedure to be employed before a judgment of *non pros* can be entered in favor of a defendant. *See id.* However, in its *per curiam* order promulgating these Civil Rules, our Supreme Court stated: "The new and amended rules shall apply to all pending actions in which a judgment of non pros for failure to file a certificate of merit has not been entered by the effective date." *Id.*

¶ 26 In this case, Defendants praeciped for entry of judgment on December 20, 2006, and the prothonotary entered a judg-

ment of *non pros* on that same date. Since the June 16, 2008 amendments to Pa.R.C.P. 1042.1 *et. seq.* do not have retroactive application to the instant case, we find that they do not evince a reasonable explanation for Appellants' failure to file a COM. The trial court, therefore, did not abuse its discretion in finding that Appellants' untimely motion to extend, and reliance on *Herrmann* and the recent changes to Pa.R.C.P. 1042.1, *et. seq.*, were invalid excuses for failing to file a COM.

¶ 27 In their final argument, Appellants claim that the trial court erred in denying their petition to open because the trial court failed to apply Pa.R.C.P. 126 and use its equitable powers to open the judgment of *non pros.* Brief for Appellants at 49–55. Specifically, Appellants assert that they substantially complied with the procedure of Pa.R.C.P. 1042.1, *et. seq.*, and contend "that the purpose behind the judgment of non pros for failing to file a [COM] was not served in this instance." *Id.* at 54. Appellants further point to the fact that they filed an untimely motion to extend and shortly before trial, served Defendants with an expert report. *Id.* at 53, 55. After review, we reject Appellants' arguments as running counter to *Womer v. Hilliker,* 589 Pa. 256, 908 A.2d 269, 278 (2006).

¶ 28 In *Womer,* our Supreme Court held that although the plaintiff served discovery materials—including an expert report—on the defendant, this conduct did not amount to "substantial compliance" with the Civil Rules governing the filing of a COM. In differentiating between "no compliance" and "substantial compliance" for purposes of Pa.R.C.P. 126, the Court pronounced:

> ... Hilliker's position is the correct one, since Womer took no steps to comply with Pa.R.C.P. No. 1042.3. Rule 1042.3 is clear and unambiguous in its mandate that in every professional liability action a specific representation about the plain-

tiff's claim must be filed in the official record in a document called a [COM] at the time the complaint is filed or within sixty days thereafter.... Moreover, Pa. R.C.P. No. 1042.3(d), which allows for the filing and granting upon good cause shown of a motion to extend the time for filing a COM, sets forth the one and only step that a plaintiff is to take if he finds himself unable to secure a COM and desires to avoid the consequences of not satisfying Rule 1042.3(a)'s COM filing requirement in a timely fashion. Womer, however, did nothing of the sort. Rather, he served discovery materials on Hilliker, which included an expert report. In our view, this was no procedural misstep within the meaning of Pa. R.C.P.No. 126. It was instead, a wholesale failure to take any of the actions that one of our rules requires, of the type that we have heretofore refused to overlook under Rule 126.

In contending that even though he made no effort to follow Pa.R.C.P. No. 1042.3's requirements, Rule 126 can apply in his circumstances because he fulfilled Rule 1042.3's purpose, Womer is essentially arguing that the doctrine of substantial compliance in Rule 126 not only excuses a party who commits a procedural misstep in attempting to do that which a rule instructs, but also excuses a party who does nothing that a rule requires, but whose actions are consistent with the objectives he believes the rule serves. This is simply not so. The equitable doctrine we incorporated into Rule 126 is one of substantial compliance, not one of no compliance. We reiterate what our case law has taught: Rule 126 is available to a party who makes a substantial attempt to conform, and not to a party who disregards the terms of a rule in their entirety and determines for himself the steps he can take to satisfy the procedure that we have adopted to enhance the functioning

of the trial courts. Therefore, we conclude that Womer did not substantially comply with Pa.R.C.P. No. 1042.3 for purposes of Pa.R.C.P. No. 126's application[.]

*Id.* at 278.

¶ 29 Adhering to *Womer,* we summarily reject Appellants' argument that including an expert report in its pre-trial statement fulfilled the purpose of Pa.R.C.P. 1042.3 or constituted substantial compliance under Pa.R.C.P. 126. Moreover, Appellants' motion to extend was untimely by over a month, and Appellants did not provide any explanation for their failure to comply with the time limitations of Pa.R.C.P. 1042.3(d). In addition, Appellants proffered no explanation as to why they failed to file a COM in the *three years* that lapsed since their filing of the untimely motion to extend and Defendants' praecipe for judgment of *non pros.* Given these circumstances, we conclude that Appellants' conduct more closely demonstrates "no compliance," as opposed to "substantial compliance," with the requirements of Pa.R.C.P. 1042.3 and the filing of a COM. The trial court, accordingly, did not abuse its discretion in finding that Pa.R.C.P. 126 does not entitle Appellants to relief under the facts of this case.

¶ 30 For the above-stated reasons, we affirm the trial court's order denying, in part, Appellants' petition to open.

¶ 31 Order AFFIRMED.