Sonya POLLOCK, Appellant

v.

Michael A. FEINSTEIN, M.D.,
and Timothy F. Shawl,
M.D., Appellee.

Superior Court of Pennsylvania.

Argued Sept. 20, 2006.
Filed Feb. 13, 2007.

Michael D. Pomerantz, Philadelphia, for appellant.

Martin Karo, Blue Bell, for appellee.

BEFORE: FORD ELLIOTT, P.J., McEWEN, P.J.E., and COLVILLE, J.*

OPINION BY McEWEN, P.J.E.:

¶ 1 Appellant, Sonya Pollock, appeals from the order denying her petition to strike the judgment of *non pros* entered in favor of appellees, Michael A. Feinstein, M.D., and Timothy F. Shawl, M.D., a judgment entered by the prothonotary after appellant failed to file a certificate of merit within sixty days of the filing of a complaint. *See:* Pa.R.C.P. No. 1042.6. We affirm.

¶ 2 This appeal arises from a claim brought by appellant against appellees for their alleged failure to obtain her informed consent to a procedure performed by appellee, Dr. Feinstein, on September 5, 2003, specifically, a laparoscopic tubal ligation and the removal of an intrauterine device (IUD). The anterior abdominal wall of appellant was lacerated during this procedure, causing her, she claimed, to suffer physical, emotional, and economic injuries. Appellant alleged that appellees failed to inform her of the risks of abdominal bleeding, and that she would not have consented to the procedure had she been so informed.

¶ 3 Appellant, on September 7, 2005, commenced a civil action by writ of summons, and, on October 31, 2005, filed a complaint against Dr. Feinstein, and his partner, Dr. Shawl, setting forth a single count for lack of informed consent. In that count, appellant did not allege that appellees performed an unauthorized procedure, but rather alleged that she was not fully apprised of the risks of the procedure to which she had agreed. Appellant, however, did not file a certificate of merit with the complaint, or within sixty days of filing the complaint. Appellees, nine weeks thereafter, on January 5, 2006, filed a *praecipe* for entry of judgment of *non pros* for failure to file a certificate of merit, and the prothonotary, on the following day, entered a judgment of *non pros* in their favor. *See:* Pa.R.C.P. Nos. 1042.3, 1042.6. Appellant promptly filed, on January 10, 2006, a petition to strike the judgment of *non pros*, arguing that she was not required to file a certificate of merit since her action only involved a claim of a lack of informed consent, a cause of action sounding in battery, which did not require her to

* Retired Senior Judge assigned to the Superior Court.

allege a deviation from an acceptable standard of medical care. The trial court, on February 6, 2006, upon consideration of the memoranda of law submitted by appellant and appellees, denied the motion to strike the judgment of *non pros*. This appeal followed.

■ ¶ 4 Appellant, in the brief filed in support of this appeal, poses a single question for our review: Whether a *praecipe* for entry of judgment of *non pros* pursuant to Pa.R.C.P. 1042.6 should be stricken when the complaint does not allege a deviation from the professional standard of care and, therefore, requires no certificate of merit. The standard governing our review of the denial of a petition for relief from the entry of a judgment of *non pros* is well settled. "[W]e will reverse the trial court only if we find a manifest abuse of discretion." *Varner v. Classic Communities Corp.*, 890 A.2d 1068, 1072 (Pa.Super.2006) (citations omitted). Since a motion to strike a judgment of *non pros* only challenges defects appearing on the face of the record, "such a motion may not be granted if the record [regarding the entry of the judgment] is self-sustaining." *Id.* (citation omitted). Nevertheless, the interpretation and application of the Pennsylvania Rules of Civil Procedure present questions of law, and our review on these matters is plenary. *Womer v. Hilliker*, 589 Pa. 256, 267, 908 A.2d 269, 276 n. 8 (2006).

¶ 5 The standards governing the filing of a certificate of merit in a professional liability claim are set forth in Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, which provides:

> In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party....

Pa.R.C.P. No. 1042.3(a). Rule 1042.6(a) requires the prothonotary, upon *praecipe* of defendant, to enter a judgment of *non pros* against the plaintiff for failure to file a certificate of merit within the required time, so long as there is no pending timely filed motion seeking to extend the time to file a certificate of merit. Pa.R.C.P. No. 1042.6(a).

■ ¶ 6 The Supreme Court, in *Womer v. Hilliker, supra*, aptly summarized the policies underlying the rules of civil procedure governing professional liability claims:

> By way of background, we begin with the circumstances of Pa.R.C.P. No. 1042.3's adoption. Pa.R.C.P. No. 1042.3 is one in a series of rules that "govern procedure in a civil action in which a professional liability claim is asserted against a licensed professional." Pa. R.C.P. No. 1042.1(a). *See:* Pa.R.C.P. Nos. 1042.1–1042.8. We adopted these rules in January of 2003, having determined that malpractice actions were being commenced in the Pennsylvania courts more frequently. We were concerned that this trend would lead to an increase in the filing of malpractice claims of questionable merit, and sought to avoid the burdens that such claims impose upon litigants and the courts. Therefore, we exercised our rule-making authority to devise an orderly procedure that would serve to identify and weed non-meritorious malpractice claims from the judicial system efficiently and promptly. *See:* PA CONST. Art. V, § 10(c); 42 Pa.C.S. § 1722. The procedure we provided in the professional liability action rules centers on the filing of a [certificate of merit (COM)]. On the one hand, the presence in the record

of a COM signals to the parties and the trial court that the plaintiff is willing to attest to the basis of his malpractice claim; that he is in a position to support the allegations he has made in his professional liability action; and that resources will not be wasted if additional pleading and discovery take place. *See:* Pa.R.C.P. No. 1042.4, Pa.R.C.P. No. 1042.5. On the other hand, the absence from the record of a COM signals to the parties and the trial court that none of this is so and that nothing further should transpire in the action, except for the lawsuit's termination. *See:* Pa. R.C.P. No. 1042.6.

*Id.,* 589 Pa. at 266–67, 908 A.2d at 275–276 (footnote omitted). Mindful of the purposes of the Supreme Court in promulgating Rule 1042.3, we here conclude that although the rule explicitly applies to actions "based upon an allegation that a licensed professional deviated from an acceptable professional standard," the scope of the rule cannot, in our view, be limited by a technical reading to preclude its applicability to a cause of action that is based upon such an alleged lack of material medical information as would fail to attain informed consent to undergo a medical procedure.

¶ 7 Appellant correctly asserts that the established law of our Commonwealth considers a claim for a lack of informed consent to be a technical battery, and that negligence principles do not apply to this claim. *See: Montgomery v. Bazaz–Sehgal,* 568 Pa. 574, 585–586, 798 A.2d 742, 749 (2002). However, the tortious conduct alleged in this case, namely, undertaking a procedure without obtaining informed consent, comprised a claim based upon the failure of the appellees to provide appellant with a full explanation of the medical risks involved in the procedure she was to undergo. Thus, at its core, this action required a showing that appellees failed to conform to a specific acceptable professional standard, namely "[to] provide patients with material information necessary to determine whether to proceed with the surgical or operative procedure, or to remain in the present condition." *Valles v. Albert Einstein Medical Center,* 569 Pa. 542, 551, 805 A.2d 1232, 1237 (2002) (internal quotations and citations omitted). At a minimum, appellant was obliged to demonstrate that appellees had failed to disclose such information as would impart to her "a true understanding of the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results." *Id.,* 569 Pa. at 551, 805 A.2d at 1237 (internal quotations and citations omitted).[1] Consequently, ap-

---

1. We are mindful that appellant's cause of action for informed consent accrued on September 5, 2003, and, therefore, must be governed by the statutory definitions of the elements of an informed consent claim provided in section 504 of the Medical Care Availability and Reduction of Error (MCARE) Act of 2002, 40 P.S. § 1303.504. In full, this section provides:

   **(a) Duty of physicians.**—Except in emergencies, a physician owes a duty to a patient to obtain the informed consent of the patient or the patient's authorized representative prior to conducting the following procedures:

   (1) Performing surgery, including the related administration of anesthesia.
   (2) Administering radiation or chemotherapy.
   (3) Administering a blood transfusion.
   (4) Inserting a surgical device or appliance.
   (5) Administering an experimental medication, using an experimental device or using an approved medication or device in an experimental manner.

   **(b) Description of procedure.**—Consent is informed if the patient has been given a description of a procedure set forth in subsection (a) and the risks and alternatives

pellant bore the burden of producing expert testimony to identify the risks of the procedure, the alternatives to the procedure, and the risks of the alternatives. 40 P.S. § 1303.504(c); *McSorley v. Deger*, 905 A.2d 524, 532 (Pa.Super.2006).[2]

■ ¶ 8 The intention of the Supreme Court, as pronounced in *Womer v. Hilliker, supra,* in requiring the filing of a certificate of merit, and the nature of appellant's claim for a lack of informed consent, therefore, compel us to conclude that since the present claim was based upon an allegation of a deviation from an acceptable professional standard—specifically, that appellees failed to disclose certain risks attendant the procedure they performed—appellant was required to file a certificate of merit stating that there was a reason-

able probability the information provided by appellees had failed to impart a true understanding of the risks of the procedure. Therefore, we detect no basis upon which to reverse the order of the trial court.

¶ 9 Order affirmed.

that a reasonably prudent patient would require to make an informed decision as to that procedure. The physician shall be entitled to present evidence of the description of that procedure and those risks and alternatives that a physician acting in accordance with accepted medical standards of medical practice would provide.

(c) **Expert testimony.**—Expert testimony is required to determine whether the procedure constituted the type of procedure set forth in subsection (a) and to identify the risks of that procedure, the alternatives to that procedure and the risks of these alternatives.

(d)**Liability.**—

(1) A physician is liable for failure to obtain the informed consent only if the patient proves that receiving such information would have been a substantial factor in the patient's decision whether to undergo a procedure set forth in subsection (a).

(2) A physician may be held liable for failure to seek a patient's informed consent if the physician knowingly misrepresents to the patient his or her professional credentials, training or experience.

40 P.S. § 1303.504.

Although these statutory definitions now expressly permit a defendant to present evidence that information provided regarding procedure was within acceptable professional standards, 40 P.S. § 1303.504(b), whether this evidentiary standard legislatively overturns our case law regarding the battery theory of the informed consent claim, or whether an informed consent claim based upon negligence principles is more appropriate as a matter of policy, are issues more properly for our Supreme Court, and, in any event, unnecessary for us to reach for the disposition of this appeal.

2. It merits emphasis that our conclusion is limited to a cause of action for a lack of informed consent arising under section 504(d)(1) of the MCARE Act of 2002. Therefore, our holding in the instant case does not apply to claims arising from so-called "medical batteries," such as claims in which a patient never consented to a non-emergency procedure, claims regarding the assent to the performance of the procedure by a particular professional, or a claim predicated upon consent obtained through a knowing misrepresentation of a physician's professional credentials. A resolution of these questions remains for a future appellate tribunal to resolve.